IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KATHERINE MEEK,**<br>    Address:<br>    11916 W. 82nd Terrace<br>    Lenexa, Kansas 66215<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**INTERIORS ONE, INC., D/B/A**<br>**JOHNSON FLOOR AND HOME**<br>**CARPET ONE,**<br>    Serve at:<br>    Interiors One, Inc.<br>    10601 E. Ute Street<br>    Tulsa, OK 74116<br><br>                    **Defendant.** | **JURY TRIAL DEMANDED**<br><br>Civ. No.: _____ |

## COMPLAINT

COMES NOW Plaintiff, Katherine Meek, by and through her attorneys, for her cause of action against Interiors One, Inc., d/b/a Johnson Floor and Home Carpet One ("Defendant" or "Johnson Floor"), states as follows:

### Parties

1. Plaintiff is a citizen of the United States and currently resides in Lenexa, Kansas.

2. Plaintiff was employed by Defendant at its business location in Lenexa, Kansas from approximately October 1, 2018 to October 12, 2018.[1]

---

[1] Plaintiff worked for Defendant at Defendant's Lenexa, Kansas retail location, which was located at 12101 W. 87th Street Parkway, Lenexa, Kansas 66215-2809. Defendant's Lenexa, Kansas store has since closed, but Defendant still operates a location in Kansas with a mailing address of 9622 Nall Avenue, Overland Park, KS 66207.

3. Defendant Johnson Floor is a company authorized and doing business in the State of Kansas. Defendant Johnson Floor is organized out of Oklahoma with a corporate office located at 10601 E. Ute Street, Tulsa, Oklahoma 74116.

4. Johnson Floor is an "employer" within the meaning of Title VII because at all relevant times, Johnson Floor employed more than fifteen employees in an industry affecting commerce.

5. Defendant Johnson Floor's employees, supervisors, and agents, at all times herein relevant, acted on Defendant's behalf, as Defendant's agent, with actual or apparent authority, and/or Defendant approved, condoned, and/or ratified their conduct.

## Jurisdiction and Venue

6. This Court has subject-matter jurisdiction over this controversy under 28 U.S.C. § 1331, because it involves claims that arise under federal statutes, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended.

7. This Court has personal jurisdiction over Defendant because Defendant maintains minimum contacts within the state of Kansas by owning and/or managing a facility in Overland Park, Kansas, in Johnson County, which lies within the jurisdiction of the United States District of Kansas.

8. Under 28 U.S.C. § 1391(b), venue is proper in this Court because Defendant owns and/or manages a facility in Johnson County, Kansas, which lies within the jurisdiction of the United States District of Kansas. Further, venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district. Plaintiff was employed by Defendant within this judicial district, and Defendant's violations occurred within this judicial district.

### Administrative Procedures

9. On or about January 10, 2019, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Defendant Johnson Floor for sex discrimination. *See **Charge of Discrimination***, Ex. A.

10. On or about January 10, 2020, the EEOC issued to Plaintiff her Notice of Right to Sue. This lawsuit was filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue, which entitles Plaintiff to commence an action regarding her claims. *See **Notice of Right to Sue***, Ex. B.

11. The aforementioned Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties. Accordingly, the scope of this Complaint may be, and is, as broad as the scope of an EEOC investigation that could have been reasonably expected to grow out of the Charge of Discrimination.

12. Accordingly, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action.

### General Allegations Common to All Counts

13. The preceding paragraphs are fully incorporated as though fully set forth herein.

14. Plaintiff Katherine Meek is a woman.

15. On or around September 30, 2018, Defendant Johnson Floor hired Ms. Meek as a sales representative.

16. On or around September 30, 2018 Plaintiff interviewed with an individual named Doug Storer, a male supervisor at Johnson Floor. Mr. Storer informed Plaintiff that she was hired after she completed the interview.

17. Plaintiff's first day of work was scheduled on or around October 1, 2018.

18. Plaintiff was scheduled to work at Defendant's retail location in Lenexa, Kansas.

19. On October 2, 2018, Mr. Storer began to work at a different location operated by Defendant from the retail store that Plaintiff worked at in Lenexa, Kansas.

20. When Mr. Storer began to work out of the different location, Corey Williams assumed the retail store's (where Plaintiff worked) primary supervisory duties. However, Mr. Storer remained one of Plaintiff's superiors.

21. On October 5, 2018, Mr. Storer brought Plaintiff and another employee, Brian Coons, to the warehouse to "hang out" for a portion of their shifts. There did not seem to be a work-related reason for Plaintiff to go to the warehouse.

22. During the time that they were at the warehouse, Mr. Storer brought up the possibility that he may able to "see what he could do" about getting Plaintiff a pay advance, since Mr. Storer knew that Plaintiff's previous employer had been late in paying her paychecks, causing Plaintiff financial difficulties.

23. During her first two weeks of employment, Plaintiff had some attendance issues for both health and transportation related reasons. Plaintiff was absent on October 8th, 11th, and 12th. Plaintiff was also late on October 9th and 10th.

24. On Friday, October 12, 2018, Mr. Storer texted Plaintiff that he had terminated her employment because she had missed several days without notifying him.

25. Plaintiff began texting Mr. Storer about her termination on the evening of October 12, 2018.

26. Plaintiff had, in fact, been reporting her absences to Mr. Williams, who had assumed many of the supervisory responsibilities at the retail store where Plaintiff had been employed. Plaintiff told Mr. Storer this, via text, and apologized for her attendance related issues.

Plaintiff asked Mr. Storer to reconsider her termination.

27. In response to her request to reconsider, Mr. Storer said that he needed to "mull it over for the weekend."

28. On Saturday, October 13, 2018, Mr. Storer texted that he had to "let [Plaintiff] go."

29. During the conversation that followed, Mr. Storer suggested multiple times that he wanted to rehire Plaintiff, even offering to promote Plaintiff at one point. However, Mr. Storer would not give Plaintiff her job back without "commitment and more" from her.

30. When Plaintiff asked Mr. Storer to reconsider her termination on Saturday, October 13, 2018, Mr. Storer responded that he "would love to" rehire her and give her "promotions quick."

31. Mr. Storer further stated that "it'll take a lot from [Plaintiff]" to show him that he would not have regrets about rehiring her.

32. Plaintiff assured Mr. Storer that he would not have regrets and offered to show up on Monday to her job. When Plaintiff attempted to end the conversation by stating "ok, [I'll] see you on Monday" Mr. Storer replied, "not yet," prolonging the conversation and enticing Plaintiff to try harder to persuade him to give her job back. Mr. Storer repeatedly expressed interest in rehiring Plaintiff only to withdraw the prospect throughout the conversation.

33. Mr. Storer explained that he "need[ed] [Plaintiff's] commitment and more!!!" He stated: "*I need all of you* and [n]eed commitment" (emphasis added).

34. When Plaintiff told Mr. Storer that he had her commitment, Mr. Storer insisted: "More than commitment??"

35. When Plaintiff questioned what Mr. Storer meant by that, Mr. Storer told her that she would need to step up and do a manager role, and that he wanted to meet her tomorrow (Sunday, October 14, 2018). He stated that he wanted to pay her more, but that it "must be earned

5

and [he] need[ed] to know" Plaintiff was "worth it."

36. Plaintiff offered to meet Mr. Storer at the retail store the next day during business hours, but Mr. Storer said he couldn't meet her "at the store[.]" Mr. Storer seemingly withdrew the offer, stating: "Damn, Katie! I had the highest hopes for you!"

37. When Plaintiff attempted to find out what Mr. Storer wanted exactly, Mr. Storer asked her: "What are you willing to offer?? Full commitment??"

38. Plaintiff agreed to offer full commitment. Mr. Storer then stated that he needed Plaintiff "to do anything" he asked of her.

39. Plaintiff agreed, but Mr. Storer would not offer Plaintiff her job back yet and refused to let her show up to work on Monday. He stated: "I can't hire you without a fantastic reason why . . . I would need to meet you tomorrow."

40. Mr. Storer wanted to meet on the morning of Sunday, October 14, 2018 at the warehouse on Jasper St., which would be closed at the time of the meeting.

41. When Plaintiff stated that her husband could take her after they fed her daughter breakfast, and that she could be there by 10:30 a.m., Mr. Storer offered to pick her up instead because he didn't want her to mess with her "kid[']s or husband[']s schedule."

42. When Plaintiff said that it would be no trouble for her husband to take her tomorrow, Mr. Storer wanted to cancel the meeting on Sunday, and "see [her] soon" instead.

43. Plaintiff, being confused, attempted to clarify by asking if they would meet on Monday instead. Mr. Storer simply responded by seemingly withdrawing his offer again by stating "can't do" and telling Plaintiff that when she came in to get her personal belongings on Monday that she should: "[G]et [her] personals. Put them in a box" then talk to him.

44. Plaintiff again tried to clarify what Mr. Storer wanted of her. It was past 11:00 PM

on a Saturday. Suspecting his intentions, she informed him that her husband and baby were asleep and that they might as well settle it now.

45.     Mr. Storer replied by stating that she was "bust[ing] my chops hottie!" and that he was ready to tell her what he wanted from her, and that he wanted her to work for him, but he couldn't bring her back without an agreement. Mr. Storer would need to meet Plaintiff at one of the stores or at the warehouse the next day, but he did not want to meet her while the store or warehouse was open.

46.     When Plaintiff insisted on there being an agreement before she met with Mr. Storer, he stated "YOU wear black bra and panties" to the meeting. When Plaintiff responded by asking, "That's the agreement?" Mr. Storer replied by stating, "I'm in[.] Reciprocation[.]" Mr. Storer then reiterated: "black and red only" and indicated that he would tell her where they would meet.

47.     Then Mr. Storer asked Plaintiff: "Do you know how much I can pay you if you listen? Black and red only," Plaintiff asked: "How much?" Mr. Storer simply replied "Depends." Plaintiff stated, "depends isn't an entry in my calculator." Mr. Storer said "Mine [his calculator] works on who can satisfy[.] Mine pays more[.]" Disgusted, Plaintiff did not reply.

48.     On Monday, October 14, 2018, Plaintiff emailed Paul Johnson, President of Interiors One, Inc, reporting that Doug Storer had offered to rehire Plaintiff if she "satisfy[ied]" him and that he had told her to wear black or red lingerie. Plaintiff specifically complained that she had been sexually harassed.

49.     In response to the email, Paul Johnson, set up a meeting between Plaintiff, himself, Palmer Johnson, and Eric Wooten. During this meeting Plaintiff explained the circumstances of her termination and provided them with copies of the messages exchanged between her and Mr. Storer.

50. Rather than focus on the conduct of Mr. Storer, Defendant's representatives questioned Plaintiff about the accuracy of her text messages, her illness in the week leading to her termination, and the propriety of her termination. Defendant's representatives had Plaintiff prove the authenticity of her text messages by having her send a "test" text message to Mr. Storer. The insensitivity of Defendant's representatives caused Plaintiff to become emotional by the end of nearly forty minutes of skeptical questioning. Plaintiff left the meeting in tears.

## COUNT I

**Title VII – Unlawful Discrimination Based on Sex: Quid Pro Quo Sexual Harassment**

51. The above paragraphs are incorporated and re-alleged as though fully set forth herein.

52. Plaintiff is a woman who was employed by Defendant. By virtue of her sex, Plaintiff is a member of a class of persons protected by Title VII.

53. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* as amended.

54. Defendant employed Mr. Storer as a supervisor and held him out as possessing the authority to hire, fire, discipline, promote, or at least participate in or recommend such actions.

55. Plaintiff was sexually harassed because her status as a woman (a member of a protected class) made her a target of Mr. Storer's attempted sexual gratification.

56. Plaintiff was subjected to unwelcome sexual harassment when Mr. Storer conditioned her rehire upon Plaintiff engaging in sexual conduct with him.

57. Submission to Mr. Storer's sexual requests were an express or implied condition to Plaintiff's receipt of job benefits, such as her rehire and promotion to management.

58. Because Plaintiff did not submit to Mr. Storer's sexual advances, Plaintiff was denied the tangible employment benefit of being rehired and promoted.

59. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, damage to her self-esteem, emotional distress, mental anguish, and/or related compensable damage.

60. Plaintiff was subjected to quid pro quo sexual harassment discrimination.

61. The sexually harassing conduct was severe and/or pervasive.

62. Defendant failed to make good faith efforts to establish and to enforce policies that would prevent unlawful discrimination against its employees, including quid pro quo sexual harassment.

63. Defendant failed to properly train and/or otherwise inform its supervisors and employees of their duties and obligations under applicable civil rights laws, including Title VII.

64. Defendant failed to take steps to prevent its supervisors and employees from engaging in unlawful discrimination, including quid pro quo sexual harassment, and therefore, created a work environment that was conducive to the harms suffered by Plaintiff.

65. Through Defendant's failure to take prompt and/or effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

66. Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount that is sufficient to punish or to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against

Defendant for such damages, actual, nominal, and punitive as are fair and reasonable; for her reasonable attorneys' fees and costs incurred herein; for interest as allowed by law, both pre-judgment and post-judgment; and for such other legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all counts of his Complaint triable to a jury.

## Designation of Place of Trial

Plaintiff hereby designates Kansas City, Kansas, as the place of trial.

Dated: March 20, 2020

Respectfully submitted,

s/ Kathryn Rickley
Kathryn S. Rickley, KS # 23211
Matthew E. Osman, KS # 23563
OSMAN & SMAY LLP
8500 W. 110th St., Suite 100
Overland Park, KS 66210
1-913-667-9243 (Phone)
1-866-470-9243 (Fax)
krickley@workerwagerights.com
mosman@workerwagerights.com
**ATTORNEYS FOR PLAINTIFF**